# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0035V
UNPUBLISHED

| | |
|---|---|
| LINDA WILSON,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: March 18, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Ryan Daniel Pyles*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On January 4, 2019, Linda Wilson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 26, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. Although entitlement was conceded, the parties could not agree on damages, so the disputed components were submitted to SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to an award of damages in the amount **$132,184.66**,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**representing compensation of $130,000.00 for her actual pain and suffering, plus $2,184.66 for her past unreimbursed expenses.**

I.      **Procedural Overview**

As noted above, the case was initiated in January 2019. On April 15, 2020, Respondent filed a Rule 4(c) report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 21. Accordingly, on April 17, 2020, a ruling on entitlement issued finding Petitioner entitled to compensation for SIRVA. ECF No. 22.

The parties were unable to informally resolve the issue of damages, so a briefing schedule was set on April 23, 2020. ECF No. 24. Petitioner filed her brief on July 13, 2020, requesting that I award her $160,000.00 in compensation representing her past or actual pain and suffering, and $1,000.00 per year for the remainder of Petitioner's life representing her future pain and suffering. ECF No. 28. Conversely, in a brief filed on August 25, 2020, Respondent argued that Petitioner should be awarded $90,000.00 representing her past pain and suffering, and no award for future pain and suffering. ECF No. 30. Petitioner filed a Reply brief on September 8, 2021. ECF No. 31. The parties otherwise agreed an award of $2,184.66 in compensation for Petitioner's past unreimbursed expenses was appropriate, and there are no other damages components in contention beyond pain and suffering. ECF No. 30 at 17, ECF No. 33.

In December of last year, I informed the parties that this case was appropriate for an expedited hearing and ruling, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 32. The parties agreed, and an expedited telephonic hearing took place on February 26, 2021 during the monthly SPU Motions Day. ECF No. 33; Non-PDF Hearing Order filed Jan. 14, 2021; Minute Entry dated March 1, 2021.[3] I orally ruled on the pain and suffering damages component at that time, and this Decision memorializes my determination.

II.     **Legal Standard and Prior SIRVA Pain and Suffering Awards**

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages (including out-of-pocket losses as well as pain and suffering) and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Human Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y*

---

[3] The transcript of the February 26, 2021 Hearing in this case was not yet filed as of the date of this Decision but is incorporated by reference herein. Leah Durant appeared on behalf of Petitioner, and Ryan Pyles appeared on behalf of Respondent.

*of Health & Human Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Human Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on February 26, 2021. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Respondent asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and has noted that they tend to be lower in magnitude). However, I find that awards issued *within* the Program (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other *reasoned* decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[5]

---

[4] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[5] I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply *Respondent's* assessment of the appropriate amount to be awarded. A special master's approval of an award at a proffered level does not provide a reasoned instance, produced

Pursuant to my oral ruling on February 26, 2021 (which is fully adopted herein), **I find that $130,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. I further find that Petitioner has not established by a preponderance of the evidence entitlement to an award for future pain and suffering.**

First, Petitioner's pain was relatively severe immediately, and prompted her to seek treatment on November 27, 2017, approximately one month after her October 26, 2017 flu vaccination in her dominant arm. Ex. 1 at 1, Ex. 2 at 28. Thereafter, she underwent relatively significant treatment for her injury, to include: physical therapy,[6] an MRI scan,[7] and arthroscopic surgery (Ex. 4 at 18).

Second, Petitioner's medical records establish that she suffered a moderately severe injury. Petitioner's reported pain levels fluctuated over time. Initially she reported to orthopedic surgeon, Richard Friedman, MD, on February 21, 2018 that "the pain [was] bothering her at night when she sleeps but otherwise [was] not limiting her daily activities [or] compromising the quality of her lifestyle." Ex. 4 at 7. However, Petitioner was seen again by Dr. Friedman on June 6, 2018, at which time he noted that she was "[s]till markedly symptomatic," that her MRI findings showed partial thickness tears in the subscapularis and infraspinatus, and that she had lost "significant motion" since she he had seen her four months prior. Ex. 4 at 17. [8] Dr. Friedman indicated that he reviewed her MRI, and that while "most of these are age related changes," he felt she had "stiffness secondary [to] inflammation from her flu injection." *Id.* Dr. Friedman recommended Petitioner for arthroscopic surgery. *Id.*

---

by a judicial neutral, that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases.

Additionally, while noting that this end result may occur in some cases (and disappoint both sides as a result), I have in fact rejected the "meeting-in-the-middle" method Respondent claims is being used, based on the proposition that "each petitioner deserves an examination of the specific facts and circumstances in her or his case." Sakovits *v. Sec'y of Health & Human Servs.,* No. 17-1028V, 2020 WL 3729420, at *3 (Fed. Cl. Spec. Mstr. June 4, 2020)

[6] Petitioner engaged in five physical therapy sessions prior to her surgery in December 2017 and January 2018 (Ex. 3), and 13 physical therapy sessions post-surgery between July 31, 2018 and August 30, 2018 (Ex. 5).

[7] Petitioner's MRI scan occurred on May 8, 2018 and indicated an impression of 1) partial width partial-thickness tears of the infraspinatus and subscapularis muscles; 2) intrasubstance tearing at the myotendinous junction of the supraspinatus; and 3) mild acromioclavicular joint arthropathy. Ex. 2 at 41-42.

[8] When Petitioner experienced the return of some shoulder symptoms after initial recovery on October 2, 2019 and May 28, 2020, she indicated that "her pain at worse is a 3 out of 10 and a 1 on average." Ex. 8 at 1, Ex. 10 at 2.

Petitioner's treatment culminated in a surgical procedure on July 30, 2018, when she underwent a right shoulder arthroscopy with lysis and resection of adhesions, and extensive glenohumeral debridement. Ex. 4 at 18.  Petitioner's post-operative diagnoses included: 1) right frozen shoulder, 2) stiffness, right shoulder, 3) type 1 SLAP tear, right shoulder, 4) right rotator interval scarring, and 5) right biceps tendinitis/tenosynovitis. *Id.*

Thereafter, Petitioner made a very good recovery after the completion of 13 post-surgical physical therapy sessions. Ex. 5. At her last physical therapy session on August 30, 2018, Petitioner indicated that she was "feeling good" with "[o]nly minimal tightness at times." Ex. 5 at 19. On September 26, 2018 Dr. Friedman reported (at nearly two months post-surgery) that Petitioner "had complete pain relief. She's very pleased to date. Examination [] show full range of motion [,] normal strength [and] all provocative tests are negative. [At] this point the patient [has] done very well. She [is] now discharged and [will] return here as needed." Ex. 4 at 24.

Petitioner sought no further treatment for her shoulder for over one year.[9] However, on October 2, 2019, Petitioner returned to orthopedics and indicated that while she had done "very well" post-surgery, "recently she [had] noticed some slight discomfort in the anterior lateral aspect of the shoulder," and now reported that "her pain at worse is a 3 out of 10 and a 1 on average." Ex. 8 at 1. On examination she was found to have positive impingement signs. *Id.* at 3.  An x-ray was negative except for diffuse osteopenia. *Id.* at 5. Petitioner was advised to continue home exercises and return as needed. *Id.* at 4.

On May 28, 2020, over seven months later, Petitioner followed-up again with orthopedics.[10] Petitioner's history and reported pain levels were identical to that reported at her October 2, 2019 appointment. Ex. 10 at 2. On examination Petitioner was noted to have positive impingement signs, mildly limited range of motion, and was assessed as having "right shoulder mild pain status post arthroscopic lysis of adhesions." *Id.* at 4. Petitioner was advised to continue home exercises and to return for a subacromial injection in eight weeks if her complaints did not resolve. *Id.* However, there is no evidence that Petitioner has sought any further treatment for her shoulder.

---

[9] Petitioner did seek treatment for her back issues during this time period, including receiving a lumbar epidural steroid injection on both September 20, 2018 and October 22, 2018. Ex. 11 at 7-8. Her diagnoses included lumbar degenerative disc disease with radiculopathy and lumbar radiculopathy. *Id.* at 7.

[10] Petitioner initially reached out by email on May 13, 2018, regarding her symptoms, but was advised to come in for an evaluation. Ex. 9 at 1-2.

In making my determination, I have fully considered Petitioner's sworn affidavits, and those of her husband, and coworkers, which describe the pain experienced by Petitioner over the course of her injury[11], as well as, the limitations in her exercise of daily functions (such as dressing, sleeping, and lifting her granddaughter), work duties, and physical activities (such as bicycle riding) attributed to her shoulder injury. Exs. 7, 12-15. While Petitioner's affidavits and medical records establish that she experienced some subsequent shoulder pain and limitations, I find that Petitioner's SIRVA, and her associated pain and suffering, was significantly improved at the time of her discharge from orthopedics on September 26, 2018, as described above. Further, although Petitioner has demonstrated that she suffered some residual and persisting symptoms of her SIRVA after her September 26, 2018 discharge, she has failed to establish she suffered a permanent injury, or is otherwise entitled to damages for future pain and suffering. Such an award would be speculative.

Additionally, Petitioner's treatment, after September 26, 2018, was minimal (two orthopedic appointments) with significant gaps between visits to medical providers. Treatment gaps are a relevant consideration in determining the degree of Petitioner's pain and suffering. *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018). There is no evidence that Petitioner pursued further treatment subsequent to her May 28, 2020 orthopedic visit, despite being advised that she should return in eight weeks for a steroid injection if her complaints did not resolve.[12] Additionally, Petitioner suffered a comorbidity, both before and after her SIRVA, that also contributed to the pain and suffering she experienced.[13]

Petitioner argues that her case is comparable to *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering), but I find the injury experienced here was somewhat milder. Petitioner, unlike in *Reed*, was largely recovered less than a year after her vaccination. And while Ms. Wilson did suffer a significant injury and symptoms after her initial post-surgical recovery, the *Reed* petitioner remained under the care of pain

---

[11] In her supplemental affidavit dated July 2, 2020, Petitioner asserted she still experienced shoulder pain three or four days a week. Ex. 12 at 1. She asserted the pain was "around a 6" on a scale of 0-10." *Id.* However, on May 28, 2020, Petitioner's orthopedic records record her pain level as 3/10 at worse and 1/10 on average. Ex. 10 at 2.

[12] Petitioner's counsel indicated at the February 26, 2021 Hearing that she did not know whether Petitioner had returned for treatment, noting she had concerns in regard to the COVID-19 Pandemic. While I recognize such concerns are reasonable, I note that Petitioner *did* seek treatment during the pandemic on May 28, 2020 when her symptoms were bothering her. Ex. 10 at 2. There is also no evidence that Petitioner reached out to providers, by email or telemedicine appointment, for further treatment or medical advice subsequent to her May 28, 2020 appointment.

[13] Petitioner suffered pre-vaccination problems in 2016 with her bilateral hip, lower extremity, back, and buttocks. Ex. 3 at 16, 18.

management specialists and continued to require the pain medication Tramadol to treat her injury. *Id.* at *9,11, 16. (Notwithstanding these facts, the *Reed* petitioner was also not found to be entitled to compensation for future pain and suffering.) In this case, no evidence exists that Petitioner remains under medical care for her injury, or that she sought the recommended steroid injection if her pain persisted. Finally, the *Reed* petitioner's physical ability to care for her young child with an ADHD autism spectrum disorder was negatively impacted by her injury – a factor not present in the instant case. *Id.* at *11, 16.

Rather, I find this case is more comparable to another case cited by Petitioner, *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for past pain and suffering and finding that the petitioner was not entitled to a future pain and suffering award). It is also more akin to *Stoliker v. Sec'y of Health & Human Servs.,* No. 17-0990V, 2020 WL 5512534 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $120,000.00 for past pain and suffering) and *Hayes v. Sec'y of Health & Human Servs.,* No. 17-0804V, 2021 WL 688628 (Fed. Cl. Spec. Mstr. Jan. 26, 2021) (awarding $120,000.00 for past pain and suffering) which also involved gaps in treatment. However, on balance, I find that Petitioner's injury in the instant case was a little more severe than the injuries suffered by the petitioners in the aforementioned cases, and accordingly award a higher award for past pain and suffering.

## IV.   Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of <u>132,184.66</u>, representing compensation of $130,000.00 for her actual pain and suffering, plus $2,184.66 for her past unreimbursed expenses.** This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.